DIEMER, WHITMAN & CARDOSI, LLP
KATHRYN S. DIEMER, #133977
75 East Santa Clara Street, Suite 290
San Jose, California 95113
Telephone: (408) 971-6270
Facsimile: (408) 971-6271

SCOTT C. CLARKSON, ESQ. (C.S.B. #143271)
EVE A. MARSELLA, ESQ. (C.S.B. #165797)
CLARKSON, GORE & MARSELLA
A PROFESSIONAL LAW CORPORATION
3424 Carson Street, Suite 350
Torrance, CA 90503
310-542-0111 Telephone
310-214-7524 Facsimile

Attorneys for Creditor Steven H. Slawinski

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE

In Re

**JERRY RAY BASSONI**

Debtor.

Case Number: 08-53123
Chapter 11

**NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS CASE, OR IN THE ALTERNATIVE, CONVERT TO CHAPTER 7**

Date: February 19, 2010
Time: 3:00 p.m.
Dept: 3035 – 280 S. First Street, San Jose, CA

TO THE UNITED STATES BANKRUPTCY JUDGE ARTHUR S. WEISSBRODT, AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE THAT** on the above-referenced date, or as soon thereafter as the matter may be heard in the above-entitled court, Creditor Steven H. Slawinski ("Slawinski" or "Judgment Creditor") will move the Court for an order dismissing the Chapter 11 case of Debtor Jerry Ray Bassoni (the "Debtor") pursuant to 11 U.S.C. §§1112 and 305. The opposition to this motion must be filed by February 5, 2010.

# MOTION

The Debtor's Chapter 11 case should be dismissed because there is overwhelming evidence that the Debtor has not listed valuable assets and holdings, the Debtor has not timely filed a plan, and cannot confirm a plan. The only basis for this filing appears to be the case where a debtor, who has lost a state court proceeding, seeks to take inappropriate advantage of the bankruptcy process to the detriment of his primary creditor for the sole purposes of hindering and delaying that creditor's judgment-enforcement activities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Steven Slawinski(herein after "Plaintiff") filed and Adversary Complaint on September 18, 2008 alleging the debt which was owed to plaintiff by Jerry Bassoni (hereinafter "Debtor") is non-dischargable pursuant to 11 U.S.C. sec. 523(a)(2), (4) and (6). The debt is a judgment obtained in State Court in Los Angeles County, Case No. YC-028070.

## I. The Original State Court Judgment (Basis for the Adversary) – June 23, 1998:

The original judgment was obtained by plaintiff a decade before in the amount of $236,879 plus costs on Plaintiff's claim for breach of fiduciary duty and conspiracy to breach fiduciary duty on June 23, 1996. After almost ten years without a single payment or attempt to pay the debt, the judgment was increased by the court to $465,533.57 on February 11, 2008. On May 5, 2008, the Los Angeles Sheriff Department seized funds in the amount of approximately $328,609.50 from some of the accounts known to belong to the Debtor. Debtor appealed and the Los Angeles Superior Court denied his claim of exemption. The court ordered that the funds be released to the judgment creditor, plaintiff, on June 3, 2008. On June 13, 2008, prior to the Sheriff's release of the funds to Slawinksi, the Debtor filed the Chapter 13 to prevent that action. Slawinski was listed as the only creditor of the Debtor in the initial filing.

## II. Chapter 13 Filing – June 13, 2008:

This case was initially filed as a Chapter 13 on June 13, 2008. The Debtor listed his total debt as $289,816.00, which he attributes to only one creditor, plaintiff, Steven Slawinski. In the investigation pursued by the Chapter 13 Trustee, Devin Derham-Burk, she found the following:

1. The Debtor had understated his assets:
    a. The balance of the two annuity accounts in possession of the Debtor was $1,001,641.61, which the Trustee determined was $100,000.00 more than the Debtor had claimed.
    b. A review of the Albert Bassoni Trust listed a primary asset as a single family home at 1481 Cherry Garden Lane, the Debtor's father who died in 1997. The trust gave the assets of the trust to Debtor and his brother equally. The brother signed a declaration that he had taken some money and given his interest in the house to the Debtor. The trust should have distributed immediately upon death of Debtor's father.
2. The Debtor's testimony under oath doesn't support the facts:
    a. The Trustee found that the Debtor testified his brother owned the house.
    b. The Debtor testified that he paid below market rent to his brother and he would have to remit back rent; however, he has never listed any rent as due and owing on any of his schedules.
    c. The Debtor's brother, Ronald, stated in his declaration under penalty of perjury he never owned the house and Debtor does not owe any rent to him.
    d. The residence is still titled in the deceased father's name, 11 years after his death.
    e. According to an opinion received from a probate attorney, the Trustee found that the Trust was drafted to terminate at the father's death. Both brothers were trustees and beneficiaries of the Trust and neither saw fit to compel title to be changed to the residence.
    f. According to Ronald's declaration, the brothers divided their father's estate and Jerry, not Ronald, got the residence as a portion of the distribution of the estate. [Attached hereto as EXHIBIT A to Kathryn Diemer's Declaration is the Declaration of Trustee in support of Motion to Dismiss Chapter 13]
3. The Trustee found the plan unworkable:

3
Motion to Dismiss Case

Case: 08-53123   Doc# 130   Filed: 01/21/10   Entered: 01/21/10 18:59:31   Page 3 of 16

a. Debtor's plan called for him to make payments of $100.00 a month for six months and $500.00 per month thereafter. As of six months after filing the plan, Debtor only made one $100.00 payment and no other payments had been received.

4. The conclusions of the Trustee in the Chapter 13 Motion:

a. The lack of candor is serious, in that the debtor has undervalued a large asset, the Fidelity annuities and has perjured himself regarding the ownership of his residence and his obligation for back rent.

b. The Trustee found that there was substantial evidence of bad faith.

## II. Conversion from Chapter 13 to Chapter 11 – April 7, 2009:

In response to the Judgment Creditor's motion to dismiss filed in the Chapter 13 proceeding, the Debtor converted the case to one under Chapter 11 on April 7, 2009.

Plaintiff continues to hold the only significant claim. At the same time, Judgment Creditor controls the unsecured creditor class and holds a virtual veto power over any plan that could be proposed. In the absence of a plan that could provide far more immediate and near-term economic benefit than anything this Debtor can hope to achieve, the defeat of any plan is a foregone conclusion. The invocation of federal jurisdiction under Chapter 11 especially on the heels of Judgment Creditor's success in the underlying state court enforcement proceedings, and subsequent motion to dismiss filed in the Chapter 13 case, was made in bad faith and for the inappropriate purpose of frustrating the Judgment Creditor's efforts to realize what value he could from the Debtor's nonexempt assets.

## IV. Bank Accounts and Probate Records Prove Debtor has Substantial Assets not listed in Schedules:

In an effort to identify assets of the Debtor when he was not forthcoming in either the 341a hearing in the Chapter 13 matter, nor in the Chapter 11 341a hearing, plaintiff subpoenaed bank records of known Fidelity Investment Accounts, Washington Mutual Accounts, located the probate file of Debtor's father, Albert Bassoni, and deposed the Debtor on December 7, 2009. The Debtor opposed the production of his Washington Mutual Accounts on the basis that these

accounts were shared with others, claiming privacy violation. [EXHIBIT B – Declaration of Kathryn S. Diemer – Motion to Quash filed 8/7/09 by Debtor]

### 1. Fidelity Accounts:

The Debtor did not oppose the production of the Fidelity Investment Accounts and those records were produced. Those records demonstrated the transfer of large sums of money between several accounts after the judgment had been filed against the Debtor, with all of the accounts listed in the name of Albert Bassoni, but on which the Debtor had signature authority. These cash transfers were all made after Debtor's father's death; many years after, however, the father's name remained on the accounts. These large transfers between accounts demonstrate that the Debtor had substantial cash available to him in the years following the filing of the judgment. [EXHIBIT B – Declaration of Kathryn S. Diemer – Bank Subpoenas and select check copies]

### 2. Probate File of Albert Bassoni – Santa Clara Superior Court 1-98-PR-142636

The probate file of Albert Bassoni (father of Debtor) revealed that Albert had a will, in which he bequeathed all his worldly goods to his two sons, Jerry and Ronald, to be divided equally. The will operated with a trust. As previously determined by Devin Derham Burk, the house was bequeathed to both the sons and Debtor's brother, relinquished his share of the home to the Debtor. All assets of the trust were handled outside probate, including the house and the personal property belonging to Albert, but two additional assets were outside of the trust.

    a. A Home Savings Account with a balance of $218,000.00 was distributed equally according to the terms of the will, on October 19, 1998. Jerry Bassoni received **$109,000.00** less $2,750 in attorney's fees, which would have afforded a substantial reduction of the judgment filed 5 months previously. [EXHIBIT C – Declaration of Kathryn S. Diemer, Judgment of Final Distribution]

    b. A Life Insurance Policy with an accrued value of $1,588,000.00 million. After receiving the order for distribution of the savings account, another asset was found. An insurance policy taken out by the Debtor in 1993,

identified the father and the Debtor as co-owners and the sole beneficiary as the Debtor. The brother disputed that the Debtor should receive all of the proceeds of this policy when the Will directed them to divide all assets to them equally. An amended order was filed on 9/4/01 granting the Debtor 58.55% of the annuity or more than **$929,774.00** of the statement dated 3/24/00. The court indicated that Debtor had put in $355,731.50 of his own money between 1993 and 1997. Demonstrating that Debtor had substantial cash available to him at the time the receiver asked that he deposit over $200K with the court. [EXHIBIT D to Declaration of Kathryn S. Diemer – Amended Order Determining Ownership of Annuity]

As a result of the death of his father in 1997, Jerry Bassoni personally received over $1,000,000.00 in cash. He also owns 100% of a house valued conservatively at $1,000,000.00. Rather than put cash into receivership, as ordered by the court, in 1997, he lined his own pockets. Rather than satisfy the judgment with available cash in 1998, the Debtor <u>chose</u> to open retirement accounts and continued to write checks out of accounts with his father's name on them. Rather than pay a renewed judgment in 2008, Debtor filed bankruptcy. Rather than honestly report his assets to the bankruptcy court, he has lied to everyone.

As previously noted to this Court, the Debtor has failed to disclose his ownership interest in real property located at 1481 Cherry Garden Lane, San Jose, CA 95125 and has been otherwise untruthful. [See EXHIBIT A to Declaration of Kathryn Diemer]. Although the Debtor averred on his schedules, and testified at his 341(a) meeting of creditors, that (1) Ronald owns the real property in which the Debtor resides; (2) the Debtor pays Ronald $200.00 per month in rent; and (3) that the Debtor should be paying Ronald more for rent and therefore owes additional money to Ronald, who is one of his creditors – Ronald's attached declaration indicates that *none of the foregoing statements is true.* Ronald declares that he does not own the property, that the Debtor does, that the Debtor does not and has never, owed him any money for rent.

a. The House

As evidenced by the statement of Ronald Bassoni as Exhibit A to Kathryn Diemer's declaration, the Debtor's brother, the Debtor possesses an interest in the house in which he resides at 1481 Cherry Garden Lane, San Jose (the "House"). Indeed, Ronald declares that he and his brother made an agreement in which they divided their father's estate - which had been left in a trust for them- and the Debtor got the House [which is contrary to the Debtor's 341a testimony]. The exact nature of the Debtor's interest (i.e., whether it is equitable or legal) is irrelevant, since the Debtor is required to identify *all* interests in property, wherever located, however held. The Debtor testified as follows at the 341(a):

> Trustee: Okay, are you the beneficiary, any Trust that anyone else has set up?
> Mr. Bassoni: No.

[EXHIBIT E – Transcript of 341a Hearing, p. 10]   This statement is false.

Moreover, the Debtor was **blatantly untrue** when he testified that he had no interest in the house:

> Trustee: And who owns the property at 1481 Cherry Garden Lane?
> Mr. Bassoni: My brother, Ronald.
> Trustee: Your brother?
> Mr. Bassoni: Ronald Bassoni. [EXHIBIT E, pages 5-6]

The Debtor also testifies that upon their father's death, Ronald took the house because he "wanted part of the estate" and he, the Debtor, took cash. [EXHIBIT E, page 15] **Ronald does not own the property. The Debtor owns the property.** See attached declaration of Ronald Bassoni. In light of these prevarications, it is obvious that the Debtor was using the fact that the title to the House had never been altered as a means of attempting to improperly shield assets from this Court and creditors.

b. Rent

It should be noted that not only did the Debtor declare, *under penalty of perjury*, on Schedule J that he paid rent, he also testified at his 341(a) meeting, *also under penalty of perjury,* that he paid rent to his brother and that he even owed his brother additional rent:

> Trustee: Ronald? Okay, and he rents to you? Your brother rents the property to you?

| | |
|---|---|
| Mr. Bassoni: | Yes, yes, he owns, yes. |
| | ….. |
| Trustee: | How much money do you owe to your brother for rent? |
| Mr. Bassoni: | I have to – I'll get it. I have to get with him to find out what he says it is. |
| Trustee: | Is he listed as a creditor in this case? |
| Mr. Bassoni: | He will be. I can guesstimate. |
| Trustee: | How much to you think you owe? Is this back rent? Is that the situation? |
| Mr. Bassoni: | yes, well nine, ten years of living there. And whatever the reasonable rent is which I'm not sure that I owe. [EXHIBIT E, pages 6-8]. |

Although the Debtor did amend his schedules, his brother was never added as an additional creditor. The Debtor also testifies [EXHIBIT E, page 17] as follows:

| | |
|---|---|
| Ms. Fitzmaurice: | The agreement that you have to pay rent to your brother, is that in writing? |
| Mr. Bassoni: | Not really. We've never agreed on an exact amount. My brother has been very nice, obviously, cause I'm sick. I was sick. He wasn't gonna throw me in the street. |

Ronald, however, declares that the Debtor does not owe him any rent; that the Debtor has never owed him any rent; that they never had any agreement regarding rent; and that Ronald does not have any interest in the House. See, attached Declaration of Ronald Bassoni.

### 3. Deposition of Jerry Ray Bassoni, December 7, 2009:

The deposition was scheduled for 10 am, to which the deponent/Debtor arrived promptly. The court reporter was late; however, the deposition began on or about 10:30 am. Shortly after the start of the deposition, the Debtor advised he was represented; however, he refused to reveal the name of his attorney and insisted he go to his car to get his cell phone, about 4 blocks away. The deposition didn't restart until after noon at which point the deponent advised he was not represented. The only question he would answer with an actual response was to that in which plaintiff's counsel asked him if he had car insurance, to which he replied, no he did not. Later that same day, he testified to Judge Weissbrodt that he didn't have car insurance because his own car was non-operative and that he was driving his daughter's car.

However, in his declaration under penalty of perjury on May 21, 2008, that he has a vehicle registered under his name "I maintain a vehicle for my own personal use." [EXHIBIT F to Kathryn Diemer's Declaration – Declaration of Jerry Bassoni in support of Claim of Exemption] In that same declaration, the Debtor states "I currently reside in a home owned by my brother Albert Bassoni, who has owned the home since before 1991." (Again, Albert was his father and he was dead over 10 years at the time of his declaration)

Additionally, the Debtor has failed to provide evidence owing or payment of rent or of insurance regarding his ownership interest of the House. [Exhibit G to Kathryn S. Diemer's Declaration - MORs in this Chapter 11 proceeding.]

The Debtor has failed to timely file taxes and tax returns [Exhibit G to Kathryn S. Diemer's Declaration - IRS proof of claim filed in this Chapter 11 proceeding].

The Debtor has failed to file a plan of reorganization and disclosure statement, notwithstanding this Court's order, requiring him to do so by August 5, 2009, nor has he filed a non-operational certificate as required by Court order on December 7, 2009. [Exhibit G to Kathryn S. Diemer's Declaration – Excerpts of the Docket report in Case No. 08-53123]

This case should be dismissed.

## V. Discussion – Points and Authorities

A.  **Cause Exists and Requires Dismissal or Conversion.**

**Dismissal or conversion of a case under Chapter 11 is governed by 11 U.S.C. § 1112.**

Absent unusual circumstances specifically identified to the Court which demonstrate that the dismissal or conversion is not in the best interest of the Creditor's and the estate, the Court is required to grant the request to dismiss or convert upon showing of cause[1].

Here, there are multiple bases for a finding of cause. The first and most obvious is the bad faith nature of the filing itself, which serves no purpose other than to hinder and delay the

---
[1] 11 U.S.C. §1112(b)(1).

Judgment Creditor's collection efforts, even though he holds the only significant claim scheduled on Schedule F. The second lies in the absolute futility of continuing with the expense of the Chapter 11 proceeding in light of the Debtor's inability to obtain the consent of or cramdown the unsecured creditors, as discussed below. Cause is recognized to exist in such circumstances because there is no point in continuing the Chapter 11 process.[2] Where, as here, Debtor has no hope of approval of a plan over Judgment Creditor's objection, no plan can ever be confirmed – and certainly no plan can be confirmed within a reasonable time.

Here, Debtor never had a hope for successful reorganization. He does not have insurance, has not filed a plan, in contravention of this Court's order to do so, has not paid his taxes and has not filed his tax returns. His motivations for filing the case were inconsistent with the purposes for which Chapter 11 exists, and there is ample cause to dismiss or convert the case immediately.

**B.   Debtor's Petition Was Filed In Bad Faith Because Bankruptcy Was Initiated Solely to Delay and Frustrate Judgment Creditor and Move a Two-Party Dispute from its State Forum.**

Pursuant to 11 U.S.C. § 1112(b), a party in interest may move the court to dismiss a bankruptcy upon any showing of "cause."[3] The Ninth Circuit has equated a dismissal based on a "bad faith" filing to a dismissal for "cause" for the purposes of Section 1112.[4] Where the Court is moved for a dismissal based on a bad faith filing, the moving party bears an initial, prima facie burden of demonstrating bad faith, and "[t]he burden of proof then shifts to the Debtor to establish that the filing was made in good faith."[5] Good faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to affect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose."[6]

---

[2]   See, e.g., *In re Woodstock Associates*, 19 F.3d 312, 321 (7th Cir. 1994); *Clarkson v. Cooke Sales & Service Co. (In re Clarkson)*, 767 F.2d 417, 419 (8th Cir. 1985); and *Stage Land Co. v. United States*, 71 B.R. 225, 230 (D. Minn. 1986).

[3]   11 U.S.C § 1112(b) providing that, "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested…dismissal is not in the best interest of the creditors and the estate, the court shall…dismiss a case under this chapter…in the best interest of the creditors and the estate, if the Judgment Creditor establishes cause").

[4]   See *Marsch v. Marsch*, 36 F.3d 825, 828 (9th Cir. 1994)

[5]   See *In re Fraternal Composite Serv., Inc.*, 315 B.R. 247, 249 (Bankr. N.D.N.Y)

[6]   See *In re Metro. Realty Corp.*, 433 F2d 676, 678 (5th Cir. 1971)

Whether a bankruptcy petition has been filed in bad faith "depends on an amalgam of factors and not upon specific fact."[7] Certain facts, however, have been held to be indicative of a bad faith filing, such as when the bankruptcy amounts to "essentially a two-party dispute,"[8] and by filing for Chapter 11 "the debtor seeks merely to delay or frustrate efforts of secured creditors."[9] The same logic applies where the purpose is to delay or frustrate the dominant unsecured Creditor. The facts here reveal quite patently that this is precisely what Debtor is trying to do through this bankruptcy case.

As set forth above, the Judgment Creditor was awarded a Judgment against the Debtor. Judgment Creditor commenced collection activities on the Judgment. The Debtor then filed a Chapter 13 petition, which he subsequently converted to a Chapter 11 in response to Judgment Creditor's motion to dismiss. Schedules I and J show that Debtor can not meet his monthly expenses as they become due. The Judgment constitutes the only significant unsecured creditor claim listed on his Schedule F.[10] As if the timing of these events were not enough to suggest that the bankruptcy petition was filed solely to stop Slawinski from collecting on the Judgment, Bassoni, through counsel, actually *admitted* as much, at least implicitly. Bassoni's Attorney's stated that the **only** reason bankruptcy was filed was in order to prevent Slawinski from enforcing his rights as a creditor.

Such an admission is significant and, along with the fact that the Debtor has no other significant unsecured creditors, provides the Court with all that is needed to find that the debtor has essentially moves a two-party dispute to bankruptcy court in order to undercut Slawinski's collection efforts. Indeed, whatever language is chosen to describe the motive of the debtor's filing- *"to avoid the effect of binding arbitration,"*[11] *"solely to gain protection from [creditors]*

---

[7] See In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986)
[8] See In re St. Paul Self Storage Ltd. P'ship, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995) (listing various factors to consider) ; see also In re Shar, 253 B.R. 621, 636 (Bankr. D.N.J. 1999)
[9] See In re Boulders on the River, 164 B.R. 99, 103 (B.A.P. 9th Cir. 1994); see also In re Albany Partners, Ltd, 749 F.2d 670, 674 (11th Cir. 1984)
[10] The paucity of unsecured creditors, closely related to an indication that the bankruptcy has been initiated to wage or frustrate what is essentially a two-party dispute, in another factor courts look to in assessing whether a petition was filed in bad faith. See In re St. Paul Self Storage Ltd. P'ship, 185 B.R. at 582-83.
[11] See Advanced Restoration Tech., Inc. v. Shortgrass, Inc., Civil Action No. 05-2978, U.S. Dist. LEXIS 22208 (D.N.J. Mar. 30, 2006) (affirming bankruptcy court's finding that "the bankruptcy proceeding is more truly a

Case: 08-53123    Doc# 130    Filed: 01/21/10    Entered: 01/21/10 18:59:31    Page 11 of 16

*in the aftermath of a State Judgment,"[12] "to avoid paying [a] judgment owed to [the debtor's] [creditor],"[13]* or *"to deter and harass creditors in their bona fide efforts to realize upon their securities"[14]* --- this filing was made in bad faith. Because filing for bankruptcy in such a fashion serves *"to defy legitimate state ends,"* the Court is perfectly empowered to *"close the federal door'* on Debtor and dismiss his Chapter 11 case.[15]

Another indicia of a bad faith filing in the present case is that the Debtor's Schedules and Statement of Financial Affairs are false or deceptive. Included in the exercise of good faith is the requirement that the Debtor disclose all assets and that all court orders be followed. It is appropriate to dismiss a chapter 11 case for cause if it appears that bad faith is present and dismissal for a lack of good faith is a matter within the Bankruptcy Court's discretion. *In re Stolrow's Inc.*, 84 Bankr. 167, 170 (9th Cir. BAP 1988). An important factor in determining the existence of bad faith is whether debtors have misrepresented material facts. *In re Goeb,* 675 F.2d 1386, 1390 n.9 (9th Cir. 1982). The finding of bad faith may rest on such nondisclosure or misrepresentation and **even subsequent amendments do not vitiate bad faith in failing to disclose relevant facts**. *Big Shanty Land Corp. v. Comer Properties,* 61 Bankr. 272, 281 (N.D. Ga. 1985). *Also see In re Rognstad*, 121 Bankr. 45 (Bankr. Hi. 1990).

As stated in *In re Setzer,* 47 Bankr. 340 (Bankr. E.D.N.Y. 1985), good faith is not defined by the Bankruptcy Code, but has been repeatedly held to require a showing of an honest intention. *See Johnson v. Vanguard Holding Corp.,* 708 F.2d 865, 868 (2d Cir. 1983) *(In re Johnson).* Its broad application to various factual situations requires inquiries into any abuses of the provisions, purpose or spirit of the bankruptcy law and into whether the debtor honestly

---

two-party dipute," despite fact that the debtor had listed eleven creditors, and that the purpose of the filing was "to avoid the effect of the binding arbitration" between the debtor and one creditor).

[12] *See In re Muskogee Environ. Conservation Co.,* 236 B.R. 57, 68 (Bankr. N. D. Okla. 1999) (dismissing petition where the debtor filed to avoid two creditors enforcing state court judgment); see also *In re Cedar Shore Resort, Inc.,* 235 F.3d 375, 380 (8th Cir. 2000) (affirming bankruptcy court's "finding that [the debtor] did not file bankruptcy to effectuate a valid reorganization, but rather to prevent [the creditor's] from pursuing their claims in state court")

[13] *See in re Dziurgot-Farnsworth,* Case No. 08-52744, 2008 U.S. Bankr. LEXIS 3200, at *6 (Bankr. D. Mass. Nov. 26, 2008)

[14] *See In re Thirtieth Place, Inc.,* 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983) (internal quotation and citation omitted).

[15] *See In re Smith,* 58 B.R. 440, 451 (Bankr. S.D.N.Y. 1984).

requires the liberal protection of the Code. *See In re Vlahakis,* 11 Bankr. 751, 753 (Bankr. M.D. Ga. 1981). Courts have held many factors to be material to the broad principle of good faith, and have recognized that the determination can only be made on an ad hoc basis. *See, e.g. In re Chase,* 28 Bankr. 814, 817-18, (Bankr. D.Md. 1983).

> The case *In re Miller*, 97 Bankr. 760, 762,63 (Bankr. W.D.N.Y. 1989), explains that:
> The phrase "badges of fraud" was coined to describe the indicia of fraud from which actual fraudulent intent can be inferred. Among the badges is the retention and concealment by a debtor of property rightfully belonging to the bankruptcy estate. Concealment is not confined to physical secretion . . . . It covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge thereof by failure or refusal to divulge owed information. Thus, a debtor's concealment of assets and interests by failing to list them in his bankruptcy petition or disclose them under subsequent examination has been held tantamount to fraud.

Here, the Debtor has failed to identify his ownership interest in real property. The Debtor has misrepresented his payment of rent. The Debtor has failed to identify the actual value of his Fidelity Annuity by omitting over $100,000 in value as of the petition date. Further, the Debtor failed to identify all bank accounts. By failing to verify all this information prior to the filing of his petition, the Debtor demonstrated complete disregard for the bankruptcy process and his related affirmations under oath (as per his affirmations at his 341a meeting of creditors).

At the very least, Judgment Creditor has carried his *prima facie* burden of demonstrating that the bankruptcy was filed in bad faith.

### C. The Petition Must Be Dismissed Because There is No Possibility of a Confirmable Plan.

Section 1112(b) specifically defines a number of things as constituting "cause" for the dismissal of a Chapter 11 bankruptcy.[16] Among the circumstances that are cause per the statutory section is a debtor's *"inability to effectuate consummation of a confirmed plan[.]"*[17] As is shown below, Debtor will be unable to obtain even confirmation of a plan, much less effectuate consummation of one that can be confirmed.

1. No Plan Could be Proposed That is Acceptable to Judgment Creditor and Any Plan that is Proposed Will Impair his Claims.

11 U.S.C. § 1129(a)(8) provides that, among the requirements for the Court to

---

[16] *See* 11 U.S.C. § 1112(b)(4)(A)-(P).
[17] *Id* § 1129(b)(4)(M).

13
Motion to Dismiss Case

Case: 08-53123    Doc# 130    Filed: 01/21/10    Entered: 01/21/10 18:59:31    Page 13 of 16

Confirm any plan of reorganization submitted by the Debtor is that *"each class of claims or interest...has accepted the plan [] or...is not impaired under the plan."*[18] With respect to the former – whether the class has or would accept the plan-per Debtor's Schedule F, Judgment Creditor makes up almost the entire unsecured class. Thus, without Judgment Creditor's support, there is no way any plan could be deemed acceptable by the unsecured class.[19] Discussion of the other pertinent prong of § 1129(a)(8)-whether Judgment Creditor's claims would be impaired by confirmation of any plan-reveals the rather obvious reasons Judgment Creditor would not accept any plan offered by Debtor. There is no conceivable way to pay the entire claim on the effective date, unless Bassoni seeks to liquidate assets, to which he has indicated a strong opposition (and, moreover, such a proposal would obviate the need for Chapter 11). Hence the plan can not leave the Judgment Creditor's rights unaltered, and they will be impaired by definition.[20]

Since it is apparent from the record that Debtor has no resources from which to pay Slawinski in full on the effective date of a plan reasonably on prospect, it is clear that Judgment Creditor's claims would be impaired under any plan submitted by Debtor. There is no conceivable way a confirmable plan could be developed in the foreseeable future, much less the near term.

The other significant portion of the listed assets is bank accounts on exemptions are claimed. Backing that asset out of the estate because of the claim of uncertainty or contingent nature or exempted status, the estate is only worth a few thousands of dollars – the Debtor has failed to identify his real property. In short, there is little chance of developing any plan that could satisfy Judgment Creditor's claim for anywhere close to full value. As such, Judgment Creditor, who makes up nearly the entire unsecured creditor class, will not consent to any plan that is submitted, and any plan that is submitted will "impair" his claims.

---

[18] *See* 11 U.S.C. § 1129(a)(8)(A)-(B).
[19] *See* 11 U.S.C. § 1126© ("A class of claims has accepted a plan if such plan has been accepted by creditor's...that hold at least two-thirds in amount and more then one-half in number of the allowed claims of such class held by creditors...that have accepted or rejected such plan."
[20] 11 U.S.C. § 1112(1)

2. There is Continuing Diminution of the Estate

The continuing diminution of the estate without a reasonable likelihood of rehabilitation, is another reason to dismiss the case. 11 U.S.C. 1112(b)(1). In *In re C.J. Corp.*, 78 Bankr. 273 (Bankr. Hi 1987), the bankruptcy court explained:

> As stated in *Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*, 172 F.2d 416, 421 (10th Cir. 1949), *cert. denied*, 388 U.S. 814, 70 S. Ct. 54, 94 L. Ed. 493 (1949), "the court is not required to retain on its docket a proceeding for reconstruction which is merely visionary or, impractical scheme of resuscitation." *See also, In re Galvin*, 49 B.R. 665 (Bkrtcy. D. N.D. 1985) (Post-petition negative cash flow is considered by courts to be evidence of continuing losses required by section 1112(b)(1), which provides that cases may be dismissed for cause of diminution of estate and absence of likelihood of rehabilitation); *In re First Lewis Road Apartments, Inc.*, 11 B.R. 576 (Bankr. E.D. Va. 1981) (Element requiring showing a "continuing loss to or diminution of the estate" may be satisfied by showing negative cash flow after order for relief).

Here, as noted above, the Debtor has negative cash flow each month.

No confirmable chapter 11 plan of reorganization is conceivably available to the Debtor, and more importantly, it is clear that the only reason the chapter 13, and now chapter 11 case was filed, was to delay and hinder the ongoing state court litigation collection efforts. If the Debtor desired to seek a discharge of his liabilities to Slawinski (and the other smaller creditors of the estate), the Debtor simply would have filed a chapter 7 case, and permitted a chapter 7 trustee oversee the estate and any distributions. The fact is, the Debtor does not desire to be in chapter 7 to achieve a discharge; he is solely interested in re-litigating the underlying Judgment in this Court, and a chapter 7 proceeding will not permit him to achieve that goal. The totality of the Debtor's case and actions – the timing of the filing, the false and misleading schedules, the omitted assets, the omitted creditors, demonstrates the bad faith of this Debtor.

3. The Debtor has failed to maintain appropriate insurance.

The Debtor has failed to maintain appropriate insurance. [See, Debtor's MORs]. Such failure poses a risk to the estate and constitutes cause for dismissal pursuant to §1112(b)(4)(C).

4. The Debtor has failed to Comply with Orders of the Court

In contravention of this Court's order, directing the Debtor to file a plan and disclosure statement by August 5, 2009, the Debtor has failed to do so. Such a failure constitutes cause for dismissal pursuant to §1112(b)(4)(J).

5. The Debtor has failed to pay and file taxes

As indicated by the IRS' filed proof of claim in the amount of $20,434.00, the Debtor has failed to pay and file his 2008 tax returns. Such a failure constitutes case for dismissal pursuant to §1112(b)(4)(I).

## IV. CONCLUSION

Debtor filed this Chapter 11 case after Bassoni lost in a State Court action, and in an effort to avoid enforcement of a Judgment against him. The only other creditors besides Judgment Creditor constitute de minimis claims. In effect, Debtor has filed bankruptcy in order to frustrate the legitimate enforcement actions of his creditors, and to move any dispute between and Slawinski out of the State Court, where nothing could be done to stop such legitimate collection actions, and into bankruptcy court, where he is using the automatic stay as a way to further his improper scheme to bilk Judgment Creditor out of money that is rightfully his. Little else can be contemplated that is more indicative of a bad faith filing. In addition, and owing to this improper motive, Debtor's own submission reveal that no "reorganization" plan could be conceived that is both confirmable and not entirely destructive to Judgment Creditor's claims. Whether by law or through equity, no proposed plan can be confirmed. Judgment Creditor requests, therefore, that this Chapter 11 case be dismissed, with a 180 days bar against re-filing, or in the alternative, to convert the case to a liquidation proceeding under Chapter 7.

Dated: January 13, 2010        DIEMER, WHITMAN & CARDOSI, LLP

                               /s/ Kathryn S. Diemer
                               By: _____
                               Kathryn S. Diemer
                               Attorneys for Steve Slawinski